IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: RENTAL CAR INTERMEDIATE HOLDINGS, LLC,<br><br>Reorganized Debtor. | ) | Chapter 11<br>Case No. 20-11247 (MFW)<br>(Jointly Administered) |
| RENTAL CAR INTERMEDIATE HOLDINGS, LLC,<br><br>Appellant,<br>v.<br><br>STEPHEN MUSACCHIO,<br><br>Appellee. | ) | C.A. No. 25-1387 (MN) |

**MEMORANDUM OPINION**

Robert J. Stearn, Jr., Zachary J. Javorsky, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; James B. Sowka, Sharilee K. Smentek, SEYFARTH SHAW LLP, Chicago, IL—Counsel to appellant, Rental Car Intermediate Holdings, LLC

"J" Jackson Shrum, JACK SHRUM, P.A., Wilmington, DE—Counsel to appellee, Stephen Musacchio.

September 30, 2026
Wilmington, Delaware

Maryellen Noreika

**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arises in the chapter 11 cases of reorganized debtor Rental Car Intermediate Holdings, LLC ("the Appellant") and certain affiliates, including Hertz Corporation ("Hertz"). Appellant has appealed the Bankruptcy Court's *Order Granting Late Filed Proof of Claim,* entered October 31, 2025 (Bankr. D.I. 1891)[1] ("the Order"), for the reasons set forth by the Bankruptcy Court on the record at an October 14, 2025 hearing (D.I. 1-2; A045-71) (Oct. 14, 2025 Hr'g Tr.) at 24:12-26:4 ("the Bench Ruling"). The Order granted the *Motion to Allow Late Filed Proof of Claim Pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(3) and 9006(b)(1)* (Bankr. D.I. 1834) ("the Motion for Leave"), filed by claimant Stephen Musacchio ("Claimant"), which sought an order deeming his proof of claim, filed three months after the applicable bar date, deemed timely. Appellant asserts that the Order should be reversed on the grounds that the Bankruptcy Court ignored a plan provision which disallowed and expunged any late-filed claim on the plan's effective date, and that the court abused its discretion in determining that Claimant satisfied the standard for excusable neglect. For the reasons set forth herein, the Order will be affirmed.

## I. BACKGROUND

### A. The Parties and the Bar Date Order and Notice

Claimant's employment was terminated by Hertz on April 14, 2020, approximately one month prior to Hertz's chapter 11 filing. (A0253). The alleged acts evidencing Claimant's retaliatory termination claim all occurred prior to Hertz entering bankruptcy. (*See, e.g.*, A207).

---

[1] The docket of the remaining chapter 11 case, captioned *In re Rental Car Intermediate Holdings*, No. 20-11247 (MFW) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The docket of the lead chapter 11 case, captioned *In re The Hertz Corporation, et al.*, No. 20-11218 (MFW) (Bankr. D. Del.), is cited herein as "Lead Bankr. D.I. __." The appendix (D.I. 16) filed in support of Appellant's opening brief is cited herein as "A___."

On May 22, 2020, Hertz and affiliated debtors commenced voluntary chapter 11 proceedings. Claimant was included on the Debtors' master service list, and it is undisputed that he received the *Notice of Chapter 11 Bankruptcy Case* (A101-04).[2] On September 9, 2020, the Bankruptcy Court entered an order establishing bar dates and related procedures for filing proofs of claim against the debtors (A160-92) ("the Bar Date Order"). The same day, the Debtors filed and served the approved form of notice of deadlines for filing proofs of claim (A193-202) ("the Bar Date Notice"). The Bar Date Order and Notice established October 21, 2020 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim in the chapter 11 cases for persons or entities, with exceptions not relevant here. (A162, A193). It appears undisputed that Claimant received notice of the Claims Bar Date on or around September 16, 2020.[3]

**B. <u>The District Court Action and the Proof of Claim</u>**

On September 17, 2020, Claimant retained the Nisar law firm regarding his wrongful termination claim. (A001; A054). On September 28, 2024, Claimant's counsel sent a demand letter to Hertz. (A055). It is undisputed that Claimant did not file a proof of claim by the October 21, 2020 deadline. On November 23, 2020, Claimant's counsel filed on his behalf a complaint against Hertz in the United States District Court for the Eastern District of New York ("the New York District Court") initiating an action based on New York Labor Law § 740, which prohibits retaliatory action by employers ("the District Court Action"), in violation of the automatic stay. (A206-15). On December 18, 2020, Hertz filed a *Suggestion of Bankruptcy* in the District Court

---

2 *See* A105-07 (Affidavit of Service filed by Prime Clerk LLC, as claims and noticing agent for the Debtors, dated June 15, 2021); A041-44 (Declaration of Jordan Searles on behalf of Kroll Restructuring Administration LLC, as claims and noticing agent for the Reorganized Debtor, dated October 7, 2025) ("Searles Decl.") ¶ 3(a)(i).

3 *See* A203-05 (Affidavit of Service filed by Prime Clerk LLC, as claims and noticing agent for the Debtors, dated March 16, 2021); Searles Decl. ¶ 3(a)(ii).

Action. (A216-20). On January 20, 2021, the New York District Court entered an order directing Claimant to "file a status report informing the Court whether Plaintiff has sought or intends to seek relief from the automatic stay or, alternatively, whether Plaintiff intends to make his claim in the bankruptcy." (A221). On February 19, 2021, Claimant filed a Status Report in the District Court Action stating: "[Claimant] consents to the Court staying this matter and represents that he is presently navigating his rights with respect to the bankruptcy process." (A238). The New York District Court entered an order staying the District Court Action. (A435 ("In light of the status report filed by [Claimant] advising that he 'consents to the Court staying the matter' pending resolution of [Hertz]'s bankruptcy proceeding . . ., the Court hereby STAYS this case.").

### C. <u>The Proof of Claim and the Proposed Plan</u>

On January 26, 2021, three months after the Claims Bar Date, Claimant filed his Proof of Claim. (A222-37). Claimant attached his complaint from the District Court Action to the Proof of Claim as supporting documentation. (A225, A228-37).

On March 2, 2021, the Debtors filed their proposed plan of reorganization (Lead Bank. D.I. 2912) and disclosure statement (*id.,* Bankr. D.I. 2913). Rather than object to Claimant's (or any other) late-filed claim pursuant to Bankruptcy Rule 3007, the Debtors' proposed plan stated that all late-filed claims would be deemed disallowed and expunged as of the plan's effective date without any further notice, with an exception only for any claims already deemed timely by the Bankruptcy Court based on excusable neglect pursuant to an order that would qualify as a "Final Order"[4] on or before the date of the hearing to consider the plan's confirmation:

---

[4] As set forth in the plan:

> "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal or seek

> **Except as otherwise provided herein or otherwise agreed by the Debtors or the Reorganized Debtors, any and all Proofs of Claim Filed after the applicable Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless the Bankruptcy Court shall have determined by a Final Order, on or before the Confirmation Hearing, that cause exists to extend the Claims Bar Date as to such Proof of Claim on the basis of excusable neglect.**

(Lead Bankr. D.I. 2912 at 70, Art. VII.G ("the Automatic Expungement Provision")). The proposed plan's Automatic Expungement Provision therefore purported to limit the Bankruptcy Court's statutory discretion, as provided in Federal Rule of Bankruptcy Procedure 9006(b)(1), to allow late-filed claims for cause in cases of excusable neglect unless it had already granted such relief by "Final Order" prior to the plan confirmation hearing.

### D. <u>Plan Confirmation and Dismissal of the District Court Action</u>

It is undisputed that Claimant received the notice of hearing to consider approval of the disclosure statement (Searles Decl. ¶ 3(a)(iii)). Neither Claimant, nor any other party, objected to the Automatic Expungement Provision. On June 10, 2021, the Bankruptcy Court entered an order (Lead Bankr. D.I. 5261) (A247-A308) ("the Confirmation Order") confirming the *Second Modified Third Amended Joint Chapter 11 Plan of Reorganization* (A309-A415) ("the Plan") (Lead Bankr. D.I. 5261-1), which contains the Automatic Expungement Provision. (*Id.* at 79, Art. VII.G) As

---

> certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, that, the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, the local rules of the Bankruptcy Court or applicable non-bankruptcy law, may be Filed relating to such order shall not prevent such order from being a Final Order.

(Lead Bankr. D.I. 2912 at 15, Art. I.A ¶ 154 (proposed plan); Lead Bankr. D.I. 5261-1 at 16, Art. I.A ¶ 162 (confirmed Plan)).

provided in the Confirmation Order, "[t]he terms of the Plan, as amended or modified, are incorporated into this Confirmation Order as if fully set forth herein." (A247). It is undisputed that Appellant received notice of the Plan's effective date. (Searles Decl. ¶ 3(a)(iv)).

On September 28, 2021, the Bankruptcy Court entered a Final Decree closing all of the Debtors' cases, except for the Appellant's pending chapter 11 case. (A423-34). Hertz emerged from bankruptcy and continued administration of matters relating to unresolved claims. From 2022 through the spring of 2023, the parties mediated the cause of action underlying Claimant's claim.

### E. <u>The Motion for Leave</u>

On April 4, 2025, the District Court Case was dismissed without prejudice for violation of the automatic stay. (A436-42). On September 12, 2025, three and a half years after confirmation of the Plan, Claimant filed the Motion for Leave seeking an order deeming his late-filed claim timely pursuant to Bankruptcy Rule 9006(b)(1) on the basis that his failure to comply with Bar Date Order resulted from excusable neglect. (*See* A001-19). On October 7, 2025, Appellant filed its objection to the Motion for Leave (A020-44) ("the Objection"). On October 14, 2025, the Bankruptcy Court held an evidentiary hearing on the Motion for Leave. (A045-71).

At the evidentiary hearing, Claimant testified that he was aware of Hertz's bankruptcy when it was filed in May 2020 because he "saw it on the news." (A054). Claimant further testified that he received various notices from Hertz regarding the bankruptcy. (A055, A060). With respect to the Bar Date Notice, Claimant testified that he received it, but did nott understand it:

> I did receive it. I didn't think it had anything to do with me because it said amount of money owed and there was nothing owed at the time because I didn't win. So, I didn't believe I had to fill that out. And clearly, I didn't understand it. And when I was told by my counsel it actually happened around the same time in September and, you know, I made them aware of the bankruptcy and they said we're not going through bankruptcy.

(*See* A055). Claimant testified candidly that his counsel at the Nasir law firm told him, "full disclosure, we're not bankruptcy attorneys, we wouldn't even know how to go about that," and instead "they were going to take the matter into District Court." (A055, A060-61). Claimant testified that he did some online research, that he was aware that he "could have the stay lifted, [and] litigate the matter," but "[i]t was very confusing," and "I didn't fully understand and comprehend what a stay order was . . . not until after." (A055, A060). Instead, Claimant "trusted [his] counsel" and "the guidance of the experts." (A055-56). Following confirmation of the Plan, and from approximately June 3, 2022 through approximately March 16, 2023, Claimant testified he and his counsel engaged in "settlement discussions" and "two JAMS mediations," which included "a few settlement offers" but resulted in no resolution. (*See* A057-59).

**F. <u>The Bench Ruling, Order and Appeal</u>**

Following testimony and argument, the Bankruptcy Court granted Claimant's Motion for Leave. With respect to the Automatic Expungement Provision, the Bankruptcy Court was "disturbed by [the Debtor's] reliance on that language . . . I don't know that I have ever approved such a procedure," but the "provision was not highlighted by anybody nor, of course, was it objected [to]," and "the Hertz case involved a lot of other issues that a lot of other parties were more intently concentrating on." (A068). Under the Bankruptcy Code, the court observed, a properly executed and filed claim "is allowed unless there is an objection filed by a party in interest," a rule which does not turn on whether the claim was also "timely filed," and there had been no claim objection here. (*Id.*). "The usual procedure is [that] an objection, whether an omnibus objection or an individual objection, usually has to be filed to a late claim in order to have that late claim disallowed," the court further observed. (A069).

The Bankruptcy Court found that Claimant was diligent in filing his Proof of Claim three months late, noting that as soon as his counsel was advised that a proof of claim had to be filed, he

acted diligently. (A069). The court further found that it was not an unreasonable assumption for Claimant to assume that his late-filed claim was still pending in absence of an objection and in light of the continued mediation of the claim. (*Id.*). As to prejudice to the Debtor, the court observed that it was not aware of any other creditor taking this position or another creditor in a similar situation, where "Hertz was defending and, in fact, was participating two years after the fact in mediations of that claim." (*Id.*). "So I think Claimant has met the Pioneer standards of showing that it was excusable neglect, that there is no prejudice to the estate. And I will grant the request for the filing of a late claim and allow it to be deemed timely as a result." (A069-70). On October 31, 2025, the Bankruptcy Court entered the Order. (A072-73).

On November 14, 2025, Appellant filed a timely Notice of Appeal. (D.I. 1). The appeal is fully briefed. (D.I. 15, 17, 18, 19). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II. <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The order deeming Claimant's proof of claim timely is a final order. *See, e.g.*, *Chemetron Corp. v. Jones (In re Allegheny Int'l, Inc.),* 70 B.R. 83, 85 (W.D. Pa. 1994), *aff'd in part and vacated and remanded in part*, 72 F.3d 341 (3d Cir. 1995) (reviewing bankruptcy court's order granting post-confirmation motion for permission to file late claims pursuant to 28 U.S.C. § 158(a)(1)); *Russo v. Freda*, 2009 WL 4672669, *1 (D. N.J. Dec. 7, 2009) (reviewing bankruptcy court's order granting motion to file late proof of claim pursuant to 28 U.S.C. § 158(a)(1)).

This Court "review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re Imerys Talc*

*Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022). An order granting a motion to allow a late-filed proof of claim based upon excusable neglect under Bankruptcy Rule 9006(b)(1) is reviewed for abuse of discretion. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 188 F.3d 116, 122 (3d Cir. 1999). "In determining whether an error exists, [the Court] review[s] de novo the [Bankruptcy] Court's application of the law to the facts." *Id.*

A bankruptcy court's interpretation of its own order is subject to review for an abuse of discretion, unless the issue being reviewed presents only a question of law, in which case it is subject to de novo review. *In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007).

## III. ANALYSIS

Federal Rule of Bankruptcy Procedure 9006(b)(1) applies whenever "these rules, a notice given under these rules, or a court order requires or allows an act to be performed at or within a specified period." Fed. R. Bankr. P. 9006(b)(1). With limited exceptions not applicable here, the Bankruptcy Court "may – at any time and for cause – extend the time to act if . . . on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect." Fed. R. Bankr. P. 9006(b)(1)(B). "[T]he burden of proof is on the late claimant to demonstrate excusable neglect by a preponderance of the evidence." *In re Hayes Lemmerz Int'l, Inc. v. Emmons*, 2012 WL 1203731, *3 (D. Del. Apr. 9, 2012) (citing *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)).

### A. The Bankruptcy Court Did Not Commit Legal Error in Deeming the Claim Timely

Appellant argues that "the Bankruptcy Court wholly ignored the Plan's automatic expungement provision – which it approved years earlier," and "[t]his was error." (D.I. 15 at 7). Appellant's briefs do not elaborate on this argument and understandably so.

A proof of claim is a written statement of a creditor's claim. Fed. R. Bankr. P. 3001(a). Bankruptcy Rule 3001(f) states that "[a] proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). "The party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity." 9A Collier on Bankruptcy ¶ 3001.09 (16th ed. 2026). In granting prima facie validity, Bankruptcy Rule 3001(f) makes no distinction between a timely and untimely claim.[5] A properly filed proof of claim is deemed allowed unless a party in interest files an objection. *In re Am. Home Mortg. Holdings, Inc.*, 637 F.3d 246, 256 (3d Cir. 2011); citing 11 U.S.C. § 502(a). A claim objection initiates a contested matter. 9A Collier on Bankruptcy ¶ 3007.01 (16th ed. 2026). "Section 502(a) thus sets forth the first way in which a claim may be allowed: A claim or interest is allowed under this section by means of a proof filed in accordance with section 501 to which no objection is made." 4 Collier on Bankruptcy ¶ 502.02 (16th ed. 2026).

As the Bankruptcy Court observed, the "automatic expungement" of late-filed claims pursuant to a plan provision is not "the usual procedure" of filing "an omnibus or an individual objection . . . to a late claim in order to have that late claim disallowed. (*See* A069). Needless to say, the plan provision is not a claim objection at all.[6] As the Debtors "wholly ignored" the

---

5 *See e.g., In re U.S. Lines, Inc.*, 2007 WL 748291, at *7 (Bankr. S.D.N.Y. Mar. 7, 2007) ("A properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Once, however, the Trust negates the *prima facie* validity . . . by showing the failure to comply with the [bar date], the claimants have the ultimate burden to demonstrate the Proof of Claim was timely filed or some other grounds, in the Bankruptcy Code and Rules, on which the claim should be allowed."); *In re Herz*, 556 B.R. 537, 542 (E.D.N.Y. 2016) (noting claimant "properly executed and filed its proofs of claim," but upon debtor "object[ing] and provid[ing] evidence the claims were not timely filed . . . the burden of proof has shifted to [claimant] to prove the validity of its claims").

6 *See In re Jankins*, 184 B.R. 488, 493 (Bankr. E.D. Va. 1995) (a provision in a chapter 11 plan requiring all creditors to file new claims would effect a claim objection without complying with Bankruptcy Rule 3007); *see also Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 497 (B.A.P. 9th Cir. 2003) ("utilizing a plan

procedures set forth in Bankruptcy Rule 3007 (D.I. 15 at 7) – which requires that "an objection to a claim and a notice of the objection must be filed and served [by mail on the claim holder] at least 30 days before a scheduled hearing on the objection or any deadline for the claim holder to request a hearing" and must include a notice "substantially conforming to Form 420B" – the confusion that followed with respect to Claimant's proof of claim is hardly surprising; indeed it is undisputed that the Debtors' attorneys and/or insurers continued litigating the claim for more than a year.

However, not only does the Automatic Expungement Provision bypass the requirements of Bankruptcy Rule 3007, it also purports to circumscribe the Bankruptcy Court's authority and discretion to extend a deadline pursuant to Bankruptcy Rule 9006(b) "at any time and for cause." Fed. R. Bankr. P. 9006(b)(1)(B). Contrary to Appellant's argument on appeal, the Bankruptcy Court's ruling did not "wholly ignore" or otherwise invalidate the Plan's Automatic Expungement Provision. Rather, in construing the Plan, the Bankruptcy Court necessarily concluded that it retained the authority and discretion to extend the deadline contained in the Bar Date Order "at any time and for cause," notwithstanding the Automatic Expungement Provision. Appellant has presented no basis to disturb the Bankruptcy Court's conclusion. *In re Shenango Grp. Inc.*, 501 F.3d at 346.

### B. The Bankruptcy Court Did Not Abuse its Discretion in Weighing the *Pioneer* Factors and Granting Relief

Before the Supreme Court's decision in *Pioneer,* which was issued in 1993, courts in this circuit considering enlargement of deadlines in a bankruptcy case held that the burden of establishing "excusable neglect" required a showing of "circumstances that are unique or extraordinary" and "beyond the reasonable control" of the claimant. *See, e.g., Matter of Dewey*

confirmation proceeding as a method of objecting to a claim presents troubling policy issues in the face of rules of procedure that appear to require formal objections to claims").

*Beach Enters., Inc.*, 110 B.R. 681, 685 (Bankr. D. Del. 1990) ("[e]xcusable neglect requires the movant to show that the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform" and denying relief with respect to a late-filed claim where "there are no unique and extraordinary circumstances beyond the control of the [claimant] which would constitute excusable neglect."); *In re Standard Poultry Co., Inc.*, 5 B.R. 643, 645 (Bankr. E.D. Pa. 1990) (same).

"*Pioneer* marked a shift in the understanding of excusable neglect." *Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001). As The Honorable Kevin Gross explained in *In re Nortel Networks*:

> In *Pioneer*, the Supreme Court set the limits of the "somewhat elastic concept" of excusable neglect. The Supreme Court balanced "neglect" and "excusable neglect." The Supreme Court stated with respect to "neglect" that "reading Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts." The Supreme Court did, however, observe that requiring the "neglect" to be "reasonable" would "deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)."

*In re Nortel Networks*, 573 B.R. 522, 527 (Bankr. D. Del. 2017) (quoting *Pioneer*) (internal citations omitted). As the First Circuit has further explained:

> Rejecting what it termed a "narrow view of 'excusable neglect,'" under which the failure to meet a deadline had to be "caused by circumstances beyond the movant's control," the [*Pioneer*] Court advanced "a more flexible analysis." The Court observed that the ordinary meaning of the word "neglect" encompasses not just unavoidable omissions, but also negligent ones, and concluded that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."

*Graphic Commc'ns Int'l*, 270 F.3d at 4-5 (quoting *Pioneer*) (internal citations omitted). As the Third Circuit has explained, under *Pioneer*, "determining whether neglect is excusable is an 'equitable' determination that 'tak[es] account of all relevant circumstances surrounding the party's omission.'" *In re O'Brien*, 188 F.3d at 125. *In re O'Brien* further explains:

> Such an equitable determination, [*Pioneer*] reasoned, is consistent with the policies underlying Chapter 11, as "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." "In overseeing this . . . process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization."

*Id*. (quoting *Pioneer*) (internal citations omitted). Ultimately, the Supreme Court identified, without limitation, the following factors for consideration: "the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. "Under *Pioneer*, a court must take into account all relevant circumstances surrounding a party's failure to file," and no one factor will "trump all the other relevant factors." *See George Harms Constr. Co. v. Chao,* 371 F.3d 156, 164 (3d Cir. 2004).

**1. <u>Prejudice to the Debtor</u>**

Appellant argues that "Hertz is greatly prejudiced by allowing [the] late-filed claim, which was expunged years ago" pursuant to the Plan, and "frustrates the fresh start to which Hertz is entitled." (D.I. 15 at 16). "Chapter 11 reorganization entitled Hertz to a fresh start; an objective of the bankruptcy code that would be frustrated should [Claimant's] claim be allowed to move forward." (*Id*. at 19 (citing cases denying similar relief years after the bar date based on the objective of giving the debtor a "fresh start")). Beyond this, Appellant simply asserts that Claimant cannot carry its burden of showing that Hertz is not prejudiced. (*See id*.).

"[T]he party seeking to file a late claim[] carries the burden of proving a lack of prejudice to the Debtor." *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006). "[P]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien,* 188 F.3d at 127. Relevant factors that may be considered when determining whether there is danger of prejudice to the debtors include: (1) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (2) whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; (3) whether payment of the claim would jeopardize the success of the debtor's reorganization; (4) whether allowance of the claim would adversely impact the debtor actually or legally; and (5) whether allowance of the claim would open the floodgates to other future claims. *In re Inacom Corp.,* 2004 WL 2283599, *4 (D. Del. 2004) (citing *In re O'Brien,* 188 F.3d at 125-26). "Other factors that have been examined include the size of the claim with respect to the rest of the estate and whether the plan was filed or confirmed with knowledge of the existence of the claim." *In re Cable & Wireless,* 338 B.R. at 614 (citing *In re O'Brien,* 188 F.3d at 126.) "There is no prejudice when all the parties can be placed in the same situation that they would have been in if the error had not occurred." *In re Cable & Wireless*, 338 B.R. at 614 (quoting *In re Tannen Towers Acquisition Corp.,* 235 B.R. 748, 755 (D. N.J. 1999)) (internal quotations omitted).

In light of the District Court Action, Hertz had actual notice of Claimant's employment dispute prior to confirmation and therefore was not surprised or caught unaware by the assertion of a claim that it had not anticipated. There is nothing in the record to support a finding that payment of the claim – asserted in the amount of $75,000 – would force the return of amounts already paid out under the confirmed Plan, affect the distribution to creditors, or otherwise jeopardize the success of the Debtors' reorganization. As to whether allowance of the claim would adversely impact Hertz actually or legally, there is no assertion of lost evidence, unavailable witnesses, impaired defenses,

or disruption to estate administration resulting from the late-filed claim. With the exception of having to (possibly) reopen the closed chapter 11 case to deal with the claim, the parties can be placed in the same situation that they would have been in if the error had not occurred – with Hertz retaining its ability to object to the merits of the claim. Finally, given the facts unique to Claimant – including the months of mediation and negotiation of the claim which followed Plan Confirmation – the Bankruptcy Court reasonably concluded that any prejudice presented by other claimants seeking the same relief was minimal. In sum, the Bankruptcy Court's evaluation of possible prejudice – the *Pioneer* factor on which courts place the greatest weight – is consistent with that of other cases where the debtor possessed prior knowledge of the underlying claim and suffered no meaningful impairment as a result of the delay.

**2. <u>Length of the Delay and its Impact on Judicial Proceedings</u>**

Appellant argues that "[t]he amount of time between the Claims Bar Date and the filing of the Motion [for Leave] is significant" and should have "weigh[ed] heavily" against Claimant. (D.I. 15 at 20). Appellant makes much of the fact that the Motion for Leave was filed "nearly five years after the Claims Bar Date, three-and-a-half years after confirmation of the Plan, [and] three years after the entry of the final decree" in the lead case. (*Id.*). Appellant is correct that courts in this district have found shorter delays to be "substantial," "significant," "lengthy," and "weigh[ing] heavily against" movants. (D.I. 15 at 20 (citing *In re Majestic Holdco, LLC,* 2013 WL 653091, at *3 (Bankr. D. Del. Feb. 21, 2013) (finding claimant's twenty-month delay in seeking leave to file proof of claim was "lengthy" and "weighs heavily against" claimant); *In re Cable & Wireless*, 338 B.R. at 616 (more than one-year delay in seeking leave to file late claim is "substantial"); *In re New Century TRS Holdings, Inc.,* 465 B.R. 38, 52 (Bankr. D. Del. 2012) (proof of claim filed four years after bar date is "significant" delay and "weighs heavily" against claimant)).

In each of the cases cited by Appellant, the claimant first filed (or sought leave to file) their proof of claim years after the bar date had passed. As the Bankruptcy Court observed, and contrary to Appellant's argument, "the proof of claim was not filed five years after the fact. It was filed three months late." (A068-69). Although Appellant emphasizes the passage of time between the Claims Bar Date and Claimant's Motion for Leave, the delay was not years long, and the Bankruptcy Court reasonably concluded that Claimant's delay did not impair the administration of the bankruptcy estate and therefore did not outweigh the remaining equitable factors.

**3. <u>Reason for the Delay</u>**

Appellant argues that Claimant's reason for delay was unreasonable, was within his control, and does not support excusable neglect. (*See* D.I. 15 at 22). Although Claimant blamed his counsel for the delay, Appellant points to caselaw holding that where a delay "was the direct result of the negligence of . . . counsel," the delay was "entirely avoidable and within [the claimant's] control." *Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 134 (3d Cir. 2005) (claim disallowed where late filing was due to counsel's negligence). Further, Appellant argues, Claimant admitted that his counsel advised him that they were not bankruptcy attorneys, but he willingly failed to retain other bankruptcy counsel. (*See id*. at 22-23).

Although reliance upon counsel is not usually sufficient to establish excusable neglect, the Supreme Court recognized in *Pioneer* that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388. The Bankruptcy Court heard testimony that Claimant "trusted the guidance of experts" while navigating simultaneous bankruptcy and district court proceedings, and believed "one doesn't have to do with the other." (A056). The Bankruptcy Court was uniquely positioned to assess witness credibility and determine whether Claimant's explanation was reasonable. Further, it is undisputed that

Claimant filed a proof of claim to which no party objected, and the Debtors continued to engage him in mediation and negotiations with respect to his claim for years after confirmation of a Plan which purportedly expunged that claim. Based on this record, the Bankruptcy Court found that Claimant's belief that his proof of claim remained pending, and his resulting delay in seeking relief from the court, was not unreasonable. This Court agrees that, under these facts, Claimant carried his burden of setting forth reasonable circumstances for his delay.

### 4. **Good Faith Actions of the Claimant**

Appellant argues that Claimant's delay in seeking to allow his late-filed claim shows a lack of good faith. (D.I. 15 at 24). Appellant asserts that Claimant, who knew from his own online research that he could have sought to have the automatic stay lifted and litigate the District Court Action, failed to do so and delayed in filing his Proof of Claim until January 26, 2021, over three months after the Claims Bar Date. (*Id*. at 24-25). According to Appellant, Claimant's "dilatory conduct in the face of his knowledge compels the conclusion that he failed to meet his burden to establish excusable neglect." (*Id*. at 25).

The Bankruptcy Court's determination that Claimant acted in good faith is supported by several findings. As to Claimant's delay in filing a proof of claim, the record supports the Bankruptcy Court's finding that "the creditor hired an attorney" and "at the time that counsel for this creditor was advised that a proof of claim actually had to be filed, was specifically advised of that, he acted diligently" and "filed it." (A069). The record further supports a finding that Claimant did not understand the Bar Date Notice and relied on his counsel's explanation that the bankruptcy proceeding and District Court Action were independent proceedings for relief. (*See* A056). As to Claimant's delay in seeking leave to deem his late-filed claim timely, the Bankruptcy Court again found that "the creditor was diligent" under the circumstances, despite the fact that under Bankruptcy Rule 3007, "the usual procedure is an objection . . . in order to have that late claim

disallowed," and the Debtor never objected to Claimant's proof of claim. This Court finds no error in the Bankruptcy Court's determination that Claimant pursued his claim in good faith despite some degree of carelessness.

## IV. CONCLUSION

Appellant has failed to demonstrate that the Bankruptcy Court committed legal error, made clearly erroneous factual findings, or abused its discretion. The Bankruptcy Court conducted an evidentiary hearing, weighed witness credibility, applied the governing *Pioneer* factors, and entered a reasoned decision supported by the record. As the Supreme Court has advised, an excusable neglect determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 B.R. at 395. The record supports the Bankruptcy Court's determinations that Appellant suffered no meaningful prejudice, that the delay did not materially impair the administration of the bankruptcy estate, that Claimant acted in good faith, and that Claimant's unusual circumstances justified equitable relief under Bankruptcy Rule 9006(b)(1). The Bankruptcy Court's exercise of discretion is entitled to substantial deference, and the Order will be affirmed. An appropriate order will be entered.